## H. T. ROBINSON v. J. W. FROST AND C. E. PARK.

### Trespass. Wife has control of Insane Husband.

1. A husband, who is insane without a guardian, but of full age, is under the control of his wife in opposition to that of his father; hence, it was not a trespass for her agents and by her request, to enter the father's dwelling against his protests and resistance, where certain rooms had been exclusively assigned to the son and his wife for a temporary abode, and, in a careful and prudent manner, to remove the husband to some other place designated by the wife.

2. In this case, independent of her marital rights, the wife was entitled to the control of her husband, as he was a resident of Illinois,' and brought into this State by her, having charge of him, and she was responsible for his restraint.

3. The father's rights as *natural* guardian cease when the son arrives at full age, and are not restored by the son's insanity.

ACTION, trespass, *quare clausum;* pleas, general issue, with sundry special pleas in bar, which were traversed. Jury trial, December Term, 1880, Windham County, VEAZEY, J., presiding; and verdict for defendant.

The plaintiff gave evidence tending to show that he was seventy-seven years old, and had for many years resided in a dwelling house owned by his daughter; that his family consisted of an invalid wife, daughter and himself; that in the month of July, 1879, his son, W. H. Robinson, with his wife, came to his house, sick, feeble in .mind and body; that, after a few months' stay the wife became dissatisfied, and determined to move her husband to another place.

The plaintiff's evidence further tended to show that on the 17th day of February, about the hour of 3 P. M., Dr. Gale, the physician in charge of said W. H., tapped at the outer door of said dwelling-house, and, without waiting for any response, walked in, passed through the room in which plaintiff was sitting, and thence into the room where said W. H. lay sick. Soon after he was followed by defendant Frost, who, in like manner, opened the outer door and passed into the sick-room. This outer door opens directly from the piazza into the family sitting-room. Soon after, defendant Frost left the house by the door he came in at, and passed up the street.

Plaintiff, suspecting a purpose to remove his son from the house, directed his daughter Eliza to lock the door, and she supposed she did so. Soon after, defendant Frost returned, accompanied by defendant Park. Both endeavored to open the door, but failed. Plaintiff told his daughter to order defendants off the premises. She raised a window and did so. Park replied, " he should go when he got ready "; and Frost that " he wanted to see Dr. Gale." Plaintiff then went to the window and ordered defendants to leave his premises. During this time defendants were standing upon plaintiff's piazza, near the door. They declined to leave, as plaintiff directed. Thereupon the wife of said W. H. Robinson came hurriedly from the sick-room to the door, and unfastened and partially opened it. The plaintiff sprang to the door, seized, held and endeavored to close it, but was prevented by Park's putting his foot between the door and the casing. Defendant succeeded in throwing it open, and during the *melee* the plaintiff was pushed or thrown back violently against the stove. Plaintiff, and his daughter Eliza, resisted to the extent of their ability the entry of defendants to the house, but without avail. They also, after the plaintiff had ordered the defendants to leave his house, made use of such ability as they had to eject and expel the defendants from the house. These efforts were unsuccessful.

The plaintiff's evidence also tended to show that he thus objected to, and resisted the removal of his son, because, he believed it dangerous to his life ; that he was informed on that day, by Dr. Gale, for the first time, that it was the purpose to remove said William, first to Brattleboro, and then to Peoria. That Dr. Gale, in January, 1880, had advised that an attempt to remove William from Brattleboro to Peoria would be fatal, and he had never been informed that Dr. Gale had changed his opinion ; that said William had gradually been failing both in body and in mind, but his mind still had sufficient strength so that he was able to judge and decide where he wanted to stay ; that about two weeks before, he informed the plaintiff, in substance, that they were about to remove him, and he did not want to go away, and asked his father to see to it that his doors were bolted and locked.

The defendant's evidence tended to prove that Elizabeth, wife of W. H., had not seen her two children since June, 1879, who were left at Peoria ; that she was anxious to return to her own home ; that the husband was very insane, incapable of deciding as to his abode ; that defendant Frost had been for many years an intimate friend of said W. H. and his wife ; that on said 17th day of February, he, Frost, and Dr. Gale, by the request of the said wife of W. H., went to the plaintiff's with a sleigh-coach properly

fitted for carrying one in his condition, for the purpose of removing said W. H. Robinson and wife to Brattleboro, and thence to Peoria, when the weather should become warmer; that it was the opinion of Drs. Gale and Campbell that the removal was reasonably safe and prudent; that the removal was made by direction of said Elizabeth, and by her, and was assisted by Dr. Gale, defendants, and one Shipman; and said W. H. was taken by Dr. Gale and defendant Frost to Brattleboro, where he remained until his death on the 23d day of April, 1880.

The only way of access to the rooms in plaintiff's house, assigned to William H. and his wife, was by the outside door opening into the sitting-room occupied by the plaintiff, and through this said sitting-room. The only way in which William H. could be taken to the bed prepared for him in the sleigh-coach, was through this sitting-room and said outside door. It was not claimed by the plaintiff but that defendants and Dr. Gale were suitable persons to assist said Elizabeth in making said removal, nor did plaintiff offer any evidence to show, nor did he claim that said removal did injure said William H., or operate to his discomfort.

The plaintiff's counsel, among other things, requested the court to charge:

That defendants had no right to enter plaintiff's dwelling-house against his will, nor had they any right to remain after he requested them to depart. Plaintiff had a right to use such force as was necessary to repel them, after their refusal to depart.

If we are wrong in our positions, and if Elizabeth Robinson had the right to remove her husband from the plaintiff's house without plaintiff's consent, she could only exercise that right in a lawful manner. Her requests to defendants to enter plaintiff's house against his will, and defendants' entry and refusal to depart pursuant to such request, in the manner that plaintiff's evidence tended to show, was unlawful.

But the court instructed the jury, in substance, that if W. H. Robinson's mind was unsound, and he was insane, then his wife had the right to say whether to go away or stay there, just the same as he would have had if he had been well; and that she had the right to use the same means to get away that he would have had if he had been sound in mind, but in the helpless condition of body which the evidence disclosed.

"That Mrs. William Robinson and her husband being there by

the consent and license of the plaintiff, and under the circumstances shown in the evidence, she had the right to have proper and suitable persons come there to attend her husband and to aid in his removal, and to open the door and admit them for this purpose, even against the locking of the door and protest or objection of the plaintiff. And if the defendants entered in this way and solely for this purpose, and they were invited and admitted by her solely for this purpose, and not to injure or violate any of the rights of the plaintiff or his family, then they had a right to stay and carry out the purpose in a proper manner, and the plaintiff had no right to interfere with them to prevent their proper discharge of that service. Neither she nor the defendants had any right to make use of or take advantage of this occasion, or to make this entry for the purpose of insulting or injuring the plaintiff or his family. The apparent and pretended purpose of being there was lawful. If that was the real and sole purpose, and they entered through the door which was opened, and on her invitation, and they made no assault upon the plaintiff or his family after they entered, but simply resisted the efforts to keep them out as they entered or to expel them afterwards, and did no more than was necessary to carry out the purpose of their entry, and did that in a prudent, careful and proper manner with reference to the plaintiff's rights, then the defendants were not trespassers. The plaintiff, by admitting his son and wife to his home, and assigning them apartments subject to their control, and insisting upon their staying, thereby in a certain sense made that the abode of the two families; and thereby parted of his own accord with that right of exclusive control which he would otherwise have had."

*Davenport & Eddy*, for the plaintiff.

The guest, for the time being, becomes one of the family, and while within the family, subject to its head. He can no more legally control the outer door than he can control the parlor, dining-room, the servants or the table. The guest can no more decide against the will of the owner, that I shall enter his outer door, than that I shall sit at his table. It is true that the guest has a right to depart at his pleasure. He has the right to open the outer door and go peaceably. For the purposes of this case, we are willing to admit that he would be excused in the use of reasonable force to *get out*. But suppose he is once out, he has no right to break in, against the owner's will, and, *a fortiori*, he cannot call defendants to his aid, and by force or stratagem, en-

Robinson *v.* Frost.

ter and disturb, or destroy the peace and quiet of the owner and his family. It is not necessary that the door of a house be closed to make him who enters into it uninvited, a trespasser. It is in general true, says Bacon, citing a number of the old law writers, that an action of trespass lies for going into a man's house, although the door be open ; and he is not obliged to keep the door shut, for every man's house is his castle. In 2 Roll. Abr., 567, H. pl. 3, is found a case where it was held that if a mother, without leave, go into a house, the door of which is open, to see her daughter, a servant in the house, there lying sick, trespass lieth. But if the door be closed, there never was any doubt of the absolute inviolability of a man's dwelling, against intruders. It is his right to decide who shall enter, and who shall be excluded. He may stand upon his own threshold, and resist, even unto death, any person who seeks to enter by force and against his will. 11 Pick. 379 ; 17 Vt. 658 ; 45 Vt. 308.

The wife is not the guardian of the husband when insane ; she cannot act as such ; and has no control over his person, Gen. Sts. c. 72, s. 54 ; 7 Vt. 372 ; 24 Vt. 123 ; 29 Vt. 148 ; Sch. Dom. Rel. 55 ; 10 Rich. Eq. 163 ; Rev. Dom. Rel., 64. The husband can restrain the wife of her liberty in certain cases, as when she intends an elopement. 1 Black. Com. 445 ; 2 Kent Com. 181 ; 1 Bish. on Mar. & Div. s. 756 ; but not the wife, the husband. *Brackett* v. *Wait*, 6 Vt. 411 ; *Barton* v. *Montpelier*, 30 Vt. 650 ; *Carlisle* v. *Sheldon*, 38 Vt. 440 ; *Ward* v. *Adams*, 35 Vt. 300. As wife she has no original and inherent power to act for her husband, save as he may authorize her, or to bind him by any contract made by her. *Green* v. *Sperry*, 16 Vt. 390 ; *Felker* v. *Emerson*, Ib. 653 ; *Sawyer* v. *Cutting*, 23 Vt. 486 ; *Meader* v. *Page*, 39 Vt. 306 ; and this is so although the husband is sick. 23 Vt. 486.

*K. Haskins* and *C. B. & C. F. Eddy*, for the defendants.

Defendants, under the circumstances, could rightfully, at the request of Elizabeth Robinson, do what she had the right to do, in respect to going to those rear rooms, through the front door and sitting-room.

Plaintiff and his daughter, in their violent interference with Elizabeth Robinson and her servants, the defendants, were the trespassers.  Their opposition and violence were unlawful.  To allow plaintiff to succeed in charging defendants as trespassers, would allow him to profit by his own wrong.  There was no error in the charge as given.  *Davis* v. *Merrill*, 47 N. H. 208 ; *Kelley* v. *Tilton*, 3 Keyes, 268 ; Addison on Torts, I. 323, (n. f.); *Sterling* v. *Warden*, 51 N. H. 217.

The opinion of the court was delivered by

TAFT, J.  This was an action of trespass *qu. cl.* for breaking and entering the plaintiff's dwelling-house.  The plaintiff is a householder in the town of Newfane.  He had a son, William H., forty-eight years of age, who, with his wife and children, was domiciled in the State of Illinois.  This son was in poor health, afflicted with disease of the brain, which greatly impaired his mind ; and in the year 1879, he came or was brought into this State, to his father's house, his wife accompanying, and as the evidence tended to show, having charge of him.  He and his wife remained at his father's house until February, 1880, when she desired to return with him to their home in Illinois.  This was opposed by the father.  The defendants, as agents and servants of the wife, entered the plaintiff's dwelling and removed the said William, and it was for this entry and resisting the plaintiff, in his attempts to prevent taking said William away, that this action was brought.

The plaintiff having given his son leave to enter his house, could not prevent his departure, unless by law he had some authority over him which would justify detaining him.  Upon the trial below no question was made as to the insanity of the son ; and the question was presented, and the case depends upon it, whether the father, or the wife, was entitled to his custody, and the control of him.  The County Court instructed the jury that the wife had the right to say whether he should be taken away or left there, the same right that William himself would have had, had he been of sound mind.  We think the instructions in this respect correct.  We do not think that the father's rights as natu-

Robinson *v.* Frost.

ral guardian, which ceased when the son arrived at full age, were restored, or became endowed with new life, upon the insanity of the son. His rights as one in charge of an insane person, and his liability in respect thereto, were the same and no greater than though such insane person had been an entire stranger to him. There was no statutory guardian ; probably none could have been appointed, as William was but temporarily in the State. It is unnecessary, however, to determine that question, as it does not arise. In the absence of such guardian, whether the father or wife should control the insane son and husband, we have no hesitation in saying, that the right should be in the wife ; for during the insanity of the husband, she should be regarded as the head of the family, and entitled to the control of it ; and that no one, as against the right of the wife, should have the power to control the abiding place of the husband ; such power naturally including the right to alter the domicil, which is sometimes accompanied with a radical change in the descent of personal estate, and in those principles that are most intimately connected with the domestic peace and rights of the famiiy.

Independent of this question of the right of the wife to control her insane husband, we think she was entitled to the care and custody of him. He was insane ; was brought into the State in her control ; and as the one actually having charge of him, whether her husband or not, she should be held responsible for his restraint, and therefore entitled to his custody.

Judgment affirmed.

Powers, J., absent.