Eric and Elizabeth SCHUPPIN, Jericho, Vermont, Tamara Schuppin b/n/f Elizabeth and Eric Schuppin as her natural guardians and parents

v.

UNIFICATION CHURCH a/k/a Holy Spirit Association for the Unification of World Christianity, New York, New York, Sun Myung Moon, Founder and Owner of the Unification Church, Neil Salonen, President, Unification Church.

Civ. A. No. 76–87.

United States District Court,
D. Vermont.

July 1, 1977.

John A. Burgess, Burgess & Normand, Montpelier, Vt., for plaintiffs Eric and Elizabeth Schuppin.

Robert D. Rachlin, Downs, Rachlin & Martin, Burlington, Vt., for plaintiff Tamara Schuppin.

Jonathan N. Brownell, Stephen C. Walke, Jr., Paterson, Gibson, Noble & Brownell, Montpelier, Vt., for defendants.

COFFRIN, District Judge.

Plaintiffs Eric and Elizabeth Schuppin on their own behalf, and as next friends of their daughter, Tamara, instituted this action to remove Tamara from the Unification Church, also known as the Holy Spirit Association for the Unification of World Christianity. Plaintiffs seek declaratory relief, compensatory and punitive damages, and such other relief as the Court deems meet and just.

The Unification Church is putatively a religious organization under the spiritual leadership of the Reverend Sun Myung Moon, a citizen of Korea and a resident alien who resides in the State of New York when he is present in the United States. Neil Albert Salonen is the President of the Holy Spirit Association for the Unification of World Christianity and resides in the State of New York. Defendant Salonen states in an affidavit that Rev. Moon is not an officer, director, or employee of the Unification Church.

The Unification Church has drawn much attention nationally due to highly publicized allegations that its members are recruited from among naive and vulnerable young people who are subjected to psychological programming or "brainwashing" which renders them powerless to resist or question the authority of Reverend Moon. While the allegations in this case fit that factual mold, the legal posture of this litigation precludes the Court from reaching the ultimate controversial questions which plaintiffs raise.

From the pleadings it appears that Tamara Schuppin joined or otherwise became associated with the Unification Church in January 1975. At that time she was 18½ years old.[1] Since January 15, 1976, she has resided outside of Vermont. In an affidavit of May 18, 1976, she stated that she had never been adjudicated incompetent to handle her own affairs, nor had a guardian or conservator been appointed for her in any jurisdiction. These assertions have not been contested, although her present mental state has been made an issue by her parents in this action.

Plaintiffs' complaint is divided into twelve sometimes overlapping counts which are premised on alleged violations of the United States Constitution, federal statutes, and Vermont common law. Several of the counts contain allegations of wrongs to Tamara Schuppin herself for which her parents seek remedies on her behalf.

The following is a brief summary of the legal claims asserted in each count.

*Count I* Tamara Schuppin is being held in involuntary servitude or peonage in violation of 18 U.S.C. § 1581.

*Count II* Tamara Schuppin has been enticed into compulsory service in violation of 18 U.S.C. § 1583.

*Count III* Tamara Schuppin has been mentally restrained from terminating her employment in violation of her rights under the thirteenth amendment to the United States Constitution.

*Count IV* Defendants have alienated and estranged Tamara Schuppin from her family and friends, thereby interfering with and impairing a relationship described in the complaint as "advantageous."

*Count V* Tamara Schuppin has been denied the "value of the services" rendered by her for the Unification Church.

*Count VI* Tamara Schuppin has worked long hours without compensation in violation of 29 U.S.C. §§ 206 and 207.

*Count VII* Tamara Schuppin's employers have not paid contributions for her benefit under the Federal Insurance Contribution Act (FICA) in violation of 26 U.S.C. § 3101 and 42 U.S.C. §§ 409 and 410.

*Count VIII* Tamara Schuppin's employers have failed to provide her with a W-2 statement of earnings or to notify her of any withholding of income for taxes in violation of 26 U.S.C. §§ 3401, 3402 and 6501

---

1. Tamara Schuppin was born July 8, 1956.

and have created anxiety in her that she may be subject to prosecution for failure to pay taxes.

*Count IX* Tamara Schuppin has been alienated from and deprived of the bond between her parents and herself and of the comfort, joy, happiness and companionship incident to that advantageous relationship.

*Count X* Defendants did willfully, knowingly and maliciously seduce Tamara Schuppin into joining the Unification Church.

*Count XI* As a result of "mind control, restraints, and techniques, together with physical manifestations of control," Tamara Schuppin is not competent to make rational decisions on her own behalf. Therefore, plaintiffs Eric and Elizabeth Schuppin seek to have her competence adjudicated in this Court.

*Count XII* Defendants, interlopers, did destroy the mutually advantageous, loving relationship that had existed among plaintiffs prior to her association with defendants.

Because Tamara Schuppin has served notice of dismissal upon the Court and all other parties to this action,[2] we must first consider whether her parents have any standing to assert any claims on her behalf as next friend or in any other capacity.

### I. *The Status of Tamara Schuppin as a Plaintiff*

Tamara Schuppin has sought no legal remedy for any wrongs on her own behalf in this litigation. In fact, as noted above, she has attempted to dismiss the action and extricate herself from this lawsuit. She is within three weeks of her twenty-first birthday and has legally been an adult at all times relevant to this action.[3] Through counsel, she argues that this Court has no jurisdiction over her, that she has disclaimed any interest in this case, and that she is fully competent to make such determinations.

Plaintiffs Eric and Elizabeth Schuppin admit that Counts I, II, III, V, VI, VII, VIII, and X must fail if they are not permitted to go forward as next friends of their daughter.[4] Such rights as they may have had because of their daughter's infancy to prosecute an action in her behalf as parents and natural guardians or next friends clearly ceased when Tamara became of full age. *Robinson v. Frost,* 54 Vt. 105, 111 (1884), *accord Railway Express Agency v. Huntress,* 51 A.2d 379 (Mun.Ct.App.D.C. 1947). Since their daughter is an adult, they have standing to initiate a suit in her behalf as next friends only if she is incompetent to do so herself. Indeed if she is in fact incompetent, and within its jurisdiction, the Court should appoint a guardian ad litem or next friend to protect her interests. Fed.R.Civ.P. 17(c).

 If the competence of an individual before the Court is in question, the issue is properly raised, and the circumstances appropriate, the Court has the power to require a mental examination of a party before it. Fed.R.Civ.P. 35. *See Smith v. United States,* 174 F.Supp. 828 (S.D.Cal.), *appeal dismissed,* 272 F.2d 228 (9th Cir. 1959), *cert. denied,* 362 U.S. 954, 80 S.Ct. 868, 4 L.Ed.2d 871, *reh. denied,* 362 U.S. 992, 80 S.Ct. 1080, 4 L.Ed.2d 1024 (1960). However, it is inconceivable that a presumably competent adult should be required by a federal court to undergo a mental examination in order to *become* a plaintiff in a suit in which she has entered an appearance by counsel to explicitly deny any interest.

The recent order of the United States Supreme Court in *Gilmore v. Utah,* 429 U.S. 1012, 97 S.Ct. 436, 50 L.Ed.2d 632 (1976) is instructive. In that case, the Court terminated a stay of execution which had previously been granted because the Court lacked jurisdiction with respect to the "next friend" application. Chief Justice Burger,

---

**2.** May 24, 1976.

**3.** Vermont adopted eighteen years as the age of majority, effective July 1, 1971. 1 Vt.Stat.Ann. § 173.

**4.** Memorandum in Opposition to Motion to Dismiss, June 25, 1976.

concurring in the Court's termination of the stay, said that such jurisdiction would arise "only if it were demonstrated that Gary Mark Gilmore is unable to seek relief in his own behalf." He continued:

Since Gary Mark Gilmore has now filed a response and appeared in his own behalf, through his retained attorneys, any basis for the standing of Bessie Gilmore [Gilmore's mother] to seek relief in his behalf is necessarily eliminated. The only possible exception of this conclusion would be if the record suggested, despite the representations of Gary Mark Gilmore's attorneys, that he was incompetent to waive his right to appeal under state law and was at the present time incompetent to assert rights or to challenge Bessie Gilmore's standing to assert rights in his behalf as "next friend."

429 U.S. at 1014, 97 S.Ct. at 438 (Burger, C. J., concurring).

Tamara Schuppin's parents submit that the record in this case *does* suggest that their daughter is incompetent to assert her rights on her own behalf and that a psychiatric examination would establish that incompetence. The Court is unable to concur in that conclusion. Even assuming *arguendo* that plaintiffs' allegations regarding the machinations of the Unification Church are true, the only scintilla of evidence in the record that Tamara is incompetent is a report of a psychiatrist who has never seen, spoken with, or examined Tamara Schuppin. His conclusion that "there is reason to believe that Tamara Schuppin is presently incompetent to make important decisions in the manner of a normal adult person" is based on (1) previous examinations of ten Unification Church members, (2) extensive discussions with Tamara's parents, and (3) tape recordings of telephone conversations Tamara had with her parents and letters she has written to them. Whatever pertinence his conclusion might have is so attenuated by the remoteness of his inquiry from its subject that it cannot be deemed to authorize this court to intrude on Tamara Schuppin's privacy to compel her to undergo psychiatric study with a view toward including her against her will as a plaintiff in this matter. Furthermore, as in the *Gilmore* case, we think it quite relevant that Tamara has not submitted to the jurisdiction of this Court, has not endorsed the complaint on its merits, and has, in fact, consistently disavowed any interest in the litigation.

Because we find no compelling reason for such an intrusion into Tamara Schuppin's affairs even if she were within our jurisdiction, the Court declines to order a psychiatric evaluation. Because plaintiffs Eric and Elizabeth Schuppin have no standing to assert claims on their daughter's behalf, Counts I, II, III, V, VI, VII, VIII and X, all of which were brought by Tamara's parents on her behalf, are dismissed.

## II. *Defendants Moon and Salonen's Motion to Dismiss*

Defendants Moon and Salonen have moved to dismiss the complaint for insufficiency of service of process and for lack of *in personam* jurisdiction over them in this action. As eight of the counts have already been dismissed, we consider this motion with reference to the four counts of the complaint which remain, even though our analysis of this question is equally applicable to those counts previously dismissed.

Defendants Moon and Salonen attack the sufficiency of the service of process upon them whereby the Vermont Secretary of State was served in their stead. They point out that there is no statutory authorization to serve the Secretary of State in lieu of an out-of-state individual. Plaintiffs rely on 11 Vt.Stat.Ann. § 1630 as justification for this manner of service of process. Section 1630 simply provides that the Secretary of State shall be process agent for any nonresident doing business in Vermont who has not appointed a process agent in Vermont.[5]

---

**5.** 11 Vt.Stat.Ann. § 1630:

Each nonresident doing business in this state in his individual capacity, or as copart-

ner or member of a copartnership or association required by sections 1621 and 1623 of this title to file the returns therein specified,

Section 1630 is complemented by §§ 1621 and 1623, which provide that anyone doing business in Vermont under a name other than his own must file a registration return and appoint a process agent and that any nonresident doing business in Vermont—even under his own name—must appoint a process agent. Failure to appoint a process agent makes the Secretary of State the process agent. However, defendants Moon and Salonen argue that these statutes do not authorize substituted service in this situation.

The pivotal question is this: Were defendants Moon and Salonen "doing business" in Vermont? Salonen's affidavit points out that Moon visited Vermont twice; in 1965 while touring the fifty United States, and on February 17–18, 1974 as a guest and speaker at an evangelical banquet at which time he was accompanied by defendant Salonen. This was Salonen's only visit to Vermont prior to the institution of this lawsuit.[6]

Doing business constitutes more than a single or isolated act; it "implies an employment or occupation that is continuing." *Johnson v. Cass & Emerson,* 91 Vt. 103, 106, 99 A. 633, 635 (1917); *see Parkhurst v. Brock,* 72 Vt. 355, 356, 47 A. 1068 (1900). Even if the evangelical activities of the Unification Church are really disguised business activities, Moon is probably not subject to the § 1621 and § 1630 substituted service provision in view of defendant Salonen's sworn statement that Rev. Moon is the spiritual leader of the Church but is not an officer, director or employee of the Church.

Defendant Salonen, as an officer of the Unification Church, presents only a slightly different case. His presence in Vermont was almost certainly partly related to the Church's "business" interests in a general sense. However, he only visited Vermont once during the time relevant to this action, and he apparently did not enter into contracts, or buy or sell goods or services here in the traditional sense. Furthermore, he was not present here when Tamara was "seduced." Once again, assuming that the Church is a legitimate religious organization, we hold that the mere presence of members, meetings or places of worship of the Unification Church in Vermont does not render the Vermont Secretary of State the continuing process agent for a church official who resides in another state, long after his having made a single trip to Vermont unrelated to the matter being litigated.

An equally dispositive issue is whether service in the manner used by plaintiffs confers jurisdiction on this Court which meets the "minimal contacts" test developed under the due process clause of the fourteenth amendment. Defendants Moon and Salonen claim that they have had insufficient contacts with Vermont to meet the requirements repeatedly enunciated by the Supreme Court. *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); *McGee v. International Life Ins. Co.,* 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). As utilized by the Second Circuit in

or under any name other than his own, except as otherwise provided, shall appoint in writing a person having an office or place of business and residing in the town wherein the principal office of such nonresident, co-partnership or association is located, upon whom process against such nonresident may be served in an action founded upon a liability incurred in this state. Such appointment shall continue in force until revoked by a like instrument appointing another person therein residing, and having therein an office or place of business. Such instrument shall be recorded in the town clerk's office in the town where such appointee resides, and by such town clerk forthwith forwarded to the

secretary of state. In the event a nonresident has not appointed a process agent, and has not filed such appointment, as above set forth, the secretary of state shall be such process agent.

6. The court takes judicial notice of the fact that defendant Neil Salonen also appeared in Vermont on May 9, 1977, to speak in Burlington. Burlington Free Press, May 11, 1977, at 3B, col. 1. This visit, occurring during the pendency of this case, does not affect the Court's determination that Moon and Salonen were not "doing business" in Vermont at the time Tamara Schuppin joined the church.

a case arising in Vermont, that concept clearly also requires that the acts upon which the suit is based must arise out of those contacts. *Deveny v. Rheem Mfg. Co.,* 319 F.2d 124 (2d Cir. 1963). The Vermont Supreme Court has restated that proposition in *Davis v. Saab-Scania of America, Inc.,* 133 Vt. 317, 320, 339 A.2d 456 (1975).

Plaintiffs argue that the recent case of *Huey v. Bates,* 375 A.2d 987 (Vt. Supreme Court, 1977) is good authority for the proposition that defendants Moon and Salonen have been properly served and that the Court can exercise jurisdiction over them. The sole question presented in *Huey* was whether the alleged contacts and activities of the defendant, John Deere Company, were sufficient to support the assertion of *in personam* jurisdiction over it in Vermont and thus validate service of process on the Secretary of State. The Court held that *in personam* jurisdiction was present where the defendant sold a crawler-dozer in Vermont by engaging in the "deliberate, knowing and purposeful utilization of its in-state distribution system." *Id.,* at 990. The Court's decision, however, was based on a finding of *both* the requisite contact and activity by the defendant within the state *and* that the litigation grew out of that contact or activity. *Id.,* at 990. Even if defendants Moon and Salonen had engaged in sufficient business activity and maintained sufficient contacts in Vermont, there is no claim whatsoever that Tamara Schuppin's joining of the Unification Church arose from or grew out of defendant Moon's or Salonen's isolated previous visits to Vermont.

For the foregoing reasons, the motion of defendants Moon and Salonen to dismiss the complaint is hereby granted.

### III. *Defendant Unification Church's Motion to Dismiss*

In light of our determination in Part II above, there remains in this action at this point only one defendant, the Unification Church itself. We have already dismissed Counts I, II, III, V, VI, VII, VIII and X in Part I, above, so we need only consider the Church's motion to dismiss as it relates to Counts IV, IX, XI, and XII.

As plaintiffs themselves denote them, Counts IV, IX, and XII are essentially attempts to state causes of action for alienation of affections between parent and child.[7] At common law the action for alienation of affections was originally only available to the husband for the enticing away of his wife. After the passage of the Married Women's Acts, wives were given the same right of action for the alienation of their husband's affections. There was no common law right of action by a parent for the alienation of a child's affections, but a person could sue for the interference of his right to the services and earnings of his minor children. *See* Annot., 60 A.L.R.3d 931 (1974).

The Restatement of Torts (Second) § 699 (1977) is a good formulation of the contemporary approach to this situation:

> One who, without more, alienates from its parent the affections of a child, whether a minor or of full age, is not liable to the child's parent.

*Restatement* of Torts (Second) § 699 (1977). In the Comment to § 699, the drafters provided some gloss on the implication to be drawn from the words "without more," as they are used in that section saying,

> . . . [I]f the parent has a cause of action against another for inducing a child to leave its home or for having sexual intercourse with it, any loss of the child's affection for its parent resulting from that conduct may be taken into account in determining the damages recoverable. But unless the loss of affection is accompanied or accomplished by these means, there can be no recovery for it.

*Id.,* Comment a. With regard to those two causes of action alluded to in the comment, the drafters plainly excluded *adult* children from the application of the restated rules. Both § 700 which deals with the cause of action for causing a child to leave or not to

---

7. Memorandum in Opposition to Motion to Dismiss, June 25, 1976, at 3.

return home and § 701 which deals with the cause of action for having sexual intercourse with a female child without her parent's consent are specifically limited to *minor* children.[8]

The Court is, of course, not bound to follow the Restatement. Nevertheless, the Vermont Legislature has itself spoken on the subject of alienation of affections, having explicitly abolished such causes of action in 1974:

> The rights of action to recover sums of money as damages for alienation of affections, criminal conversation, seduction, or breach of contract to marry are abolished. No act done within this state shall operate to give rise, either within or without this state, to any such right of action. No contract to marry made or entered into in this state shall operate to give rise, either within or without this state, to any cause or right of action for its breach.

15 Vt.Stat.Ann. § 1001.

Defendants claim that Counts IV, IX and XII of this suit are effectively barred by this statute, in light of the fact that there is no other state or federal right of relief for the alienation of affections. However, plaintiffs contend that the General Assembly intended merely to remedy the "apparent abuses where jilted lovers sue the instigator of their loved one's alienation."[9] There is nothing in the language of the Act to indicate that it was intended to be so limited. In fact, it clearly appears to abolish all actions of alienation of affections of any nature. Plaintiffs rely on the case of *Russick v. Hicks,* 85 F.Supp. 281 (W.D.Mich. 1949) in support of their position. In that case it was held that the Michigan statute abolishing the right of suit for alienation of

affections did not bar a child's action against one responsible for alienating a parent's affections since, being in derogation of the common law, the statute should be strictly construed. The language of the statute and previous nonexistence of such a right of action by the child indicated that the statute only contemplated an alienation action brought by a spouse.

Plaintiffs at best receive only limited support from *Russick v. Hicks.* That case involved a suit by minor children for the wrongful inducement of their mother to desert them. The children in *Russick v. Hicks* were two and four years old, respectively. In the instant case, the suit is brought by the parents for the alienation of their adult child's affection. The facts and statute in *Russick* in our judgment provide no reasonable ground for holding that the Vermont abolition of the alienation of affections causes of action was limited only to cases involving jilted lovers. But even if they did, such a finding would have no application to the present case because we do not discern any residual or common law cause of action for the alienation of affections or inducement of an *adult* child to leave its parent's home. Finally, regardless of whether or not the existence of such a common law cause of action could be demonstrated, we believe the meaning of the Vermont Legislature in adopting 15 Vt. Stat.Ann. § 1001 was quite clear, and that all causes of action for the alienation of affections were abolished by the adoption of that provision.

Because we find that no cause of action exists for the alienation of the affections of the Schuppin's adult daughter, Tamara, Counts IV, IX, and XII of the complaint must be dismissed.

---

**8.** One who, with knowledge that the parent does not consent, abducts or otherwise compels or induces a minor child to leave a parent legally entitled to its custody or not to return to the parent after it has left him, is subject to liability to the parent.

Restatement (Second) of Torts § 700 (1977). One other than her husband who, without her parent's consent, has sexual intercourse with a minor female child is subject to liability to

(a) the parent who is entitled to the child's services for any resulting loss of services or ability to render services, and to

(b) the parent who is under a legal duty to furnish medical treatment for expenses reasonably incurred or likely to be incurred for medical treatment during the child's minority.

Restatement (Second) of Torts § 701 (1977).

**9.** Memorandum in Opposition to Motion to Dismiss, June 25, 1976, at 5.

Count XI is brought under 28 U.S.C. § 2201 for a declaratory judgment on the question of Tamara's "competence to make decisions affecting her future." Apparently hoping to avoid the difficulties and the potentially stigmatizing effect of a state competency proceeding in the state of Tamara's current domicile, her parents seek to have this Court determine Tamara's competency for purposes of this lawsuit only. As indicated in Part I, the Court declines to adjudicate the question of Tamara's competence in this proceeding. Furthermore, a request for a declaration of Eric and Elizabeth Schuppin's right to represent Tamara based upon an adjudication of her mental competence does not state a claim against the Unification Church upon which relief can be granted. Because the other eleven counts fail for the reasons set out above, this count is not entitled to be independently litigated in this court, and is hereby dismissed pursuant to Fed.R.Civ.P. 12(b)(6).

For the foregoing reasons, the entire complaint in this action is hereby dismissed.