384 So.2d 933 (1980)
Joyce SCHOTTENSTEIN, Appellant,
v.
Alan SCHOTTENSTEIN, Appellee.
No. 79-1312.
District Court of Appeal of Florida, Third District.
June 17, 1980.
*934 Murray B. Weil, Jr., North Bay Village, for appellant.
No appearance for appellee.
Before HENDRY, NESBITT and DANIEL PEARSON, JJ.
DANIEL PEARSON, Judge.
In 1973, the Schottensteins, then residents of Ohio, entered into a separation agreement which was in the same year incorporated into an Ohio decree of divorce. Subsequently, the parties became residents of Florida.
In 1978, Joyce Schottenstein sought to have the Ohio divorce decree established and recognized as a judgment in the State of Florida and, less academically, sought to have her husband's obligation to pay alimony extended and the alimony and child support payments increased. The trial court made the Ohio decree a judgment of this state, but otherwise denied the requested relief.
The parties' separation agreement provided, inter alia, that:
"The husband shall pay to the wife for her separate maintenance and support the sum of Five Thousand Dollars ($5,000.00) per year, ... [for a period of five years] ... unless the wife dies or remarries, in which event, the husband's obligation to pay or furnish such support shall absolutely cease and terminate upon the happening of the earlier of such events."
The husband's answer to the petition labels this clause as one providing for "rehabilitative *935 alimony."[1] Rehabilitative alimony is subject to being extended and modified provided the circumstances presented to the trial court justify such action.[2] Where the amount of alimony is fixed not by the court, but by an agreement between the parties, the person seeking to modify the amount has a heavy burden. Pusey v. Pusey (Fla. 3d DCA 1980) (Case No. 79-1297, opinion filed May 20, 1980); Scott v. Scott, 285 So.2d 423 (Fla.2d DCA 1973). The trial court declined to extend or modify this alimony provision. It is not the function of this court to substitute its judgment for that of the trial court in the absence of a finding that the trial court abused its discretion. Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980); Rosenberg v. Rosenberg, 371 So.2d 672 (Fla. 1979), adopting Judge Hubbart's dissenting opinion reported at 352 So.2d 867 (Fla.3d DCA 1977); Shaw v. Shaw, 334 So.2d 13 (Fla. 1976); Yandell v. Yandell, 39 So.2d 554 (Fla. 1949); Harts v. Harts, 383 So.2d 952 (Fla.3d DCA 1980). We find no such abuse of discretion.
We find otherwise, however, with respect to the trial court's denial of increased child support. At the time of the hearing the children were ages seven and eleven, with obvious increased needs.[3] The husband objected to inquiry into his current financial circumstances and stipulated that he was quite capable of paying any child support award made. Other evidence showed him to be a multimillionaire.[4] He admits the children have increased needs, but contends that since he made adequate provision for his wife, it is she who should now pay for the children's increased needs.
Mr. Schottenstein may not by contract with his wife obviate or impair his obligation to support his minor children. Lee v. Lee, 157 Fla. 439, 26 So.2d 177 (1946). The child support payments agreed upon by the parties in 1973 are not commensurate with the husband's present financial ability and the present needs of his school-age children. Meltzer v. Meltzer, 356 So.2d 1263 (Fla.3d DCA 1978); Jelke v. Jelke, 233 So.2d 408 (Fla.3d DCA 1970). Where a party stipulates that he can adequately pay increased child support in order to foreclose inquiry into his present financial circumstances, a court can properly assume that his earnings and assets have substantially increased. A substantial increase in the earnings of the husband will, by itself, justify an increase in child support. Meltzer v. Meltzer, supra; Sherman v. Sherman, 279 So.2d 887 (Fla.3d DCA 1973). We conclude that the trial court's failure to increase the child support payments constitutes an abuse of discretion.
One point remains to be considered. The father, asserting that it would be in the best interests of the children, moved the court for the entry of an order that the children undergo psychological evaluation and counseling. The court appointed a psychologist and ordered the minor children to undergo psychiatric counseling and evaluation as the psychologist "shall deem necessary to properly evaluate the psychological condition of the children and to determine *936 the benefits to be derived by them from further psychological of the children [sic] and to determine the benefits to be derived by them from further psychological counseling." The wife contends that the trial court erred in compelling this evaluation and counseling.
We have searched the record to determine the basis for the trial court's decision. Interspersed with colloquy bearing on varied subjects we find this:
"[MR. SCHOTTENSTEIN:] ... I have a concern that they will have too much money. I want them to grow up to have a right sense of values. We are in a very changing world, in very trying times. The children are bright and capable and we agreed to this. I want them to be resourceful and have a sense of value about money. If anything, they have too much money and they should learn to handle it better.
"THE COURT: There are problems and there are problems. Maybe there is too much money. I have seen very wealthy children end up in dope and kill themselves."
.....
"I believe in psychologists and I believe in psychiatrists. If you want you can make the children go.
"MR. GEORGE [Husband's Attorney]: There is a motion before your Honor exactly for that."
.....
"MS. SCHOTTENSTEIN: My children are well adjusted children. My rabbi said to me, spontaneously, he said the children are the best adjusted children that 
"THE COURT: I understand all of that and I appreciate it." (R. 112-113).
.....
"MR. SCHOTTENSTEIN: I think there are some problems there.
"THE COURT: They are smart children and let's get this resolved.
"Do the children come back upset after they visit with him?
"MS. SCHOTTENSTEIN: Sometimes.
"THE COURT: Doesn't that indicate to you the children ought to talk to a professional?
"How many fathers do they have. If the children are upset, I think they should talk to a professional." (R. 116).
While the trial judge may be a proselyte of psychological evaluations and consultations for every minor child of divorced parents,[5] we cannot ignore the countervailing right of a person to be free from a compulsory mental examination. See Schlagenhauf v. Holder, 379 U.S. 104, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964); Schuppin v. Unification Church, 435 F. Supp. 603 (D.Vt. 1977). A compulsory mental examination has been traditionally deemed an invasion of privacy which will only be tolerated upon a showing of good cause.[6]Marroni v. Matey, 82 F.R.D. 371 (E.D.Pa. 1979); Schuppin v. Unification Church, supra; Paul v. Paul, 366 So.2d 853 (Fla.3d DCA 1979). This requirement of good cause is simply not met by a showing that the children were sometimes upset when they returned from a visitation with their father, or by the father's desire to give his children a sense of value about money.
Accordingly, we reverse the trial court's order denying to the wife additional child support and remand the cause to the trial court to determine the appropriate amount of additional child support in keeping with the husband's financial ability and the increased needs of the minor children. We further direct that the additional child support awarded by the trial court be awarded *937 retroactive to the date the wife's petition for modification was filed. Friedman v. Friedman, 307 So.2d 926 (Fla.3d DCA 1975); Meltzer v. Meltzer, 262 So.2d 470 (Fla.3d DCA 1972). We vacate that part of the trial court's order requiring the minor children to submit to psychiatric counseling and evaluation. In all other respects, the order appealed from is affirmed.
Reversed in part; affirmed in part.
NOTES
[1] Since there is no other clause in the agreement to establish any contrary intent, the categorization is proper. See O'Malley v. Pan American Bank of Orlando, N.A., 384 So.2d 1258 (Fla. 1980).
[2] While the law of Ohio, the lex loci contractus, is to the effect that an agreement for alimony in a specified amount for a specified period of time is not generally modifiable, Popovic v. Popovic, 45 Ohio App.2d 57, 341 N.E.2d 341 (Ohio Ct. App. 1975); McClain v. McClain, 26 Ohio App.2d 10, 268 N.E.2d 294 (Ohio Ct. App. 1971), the husband did not properly plead or prove Ohio law. See Hieber v. Hieber, 151 So.2d 646 (Fla.3d DCA 1963) (holding that the law of a foreign state must be pleaded and proved by the party raising its applicability).
[3] The children were two and six when the original child support was fixed by the parties. By 1978, they attended private school and summer camp. Their days were apparently filled, without complaint by the father, with tennis, gymnastics, Spanish and piano lessons. The father admittedly provided them with silver spoons, and his financial circumstances were such that he was obliged to keep them untarnished.
[4] The 1973 property settlement agreement shows the husband's net worth to be "less than $4,000,000." An accountant's statement reflects that his assets then approximated $8,000,000.
[5] We do not subscribe to the trial judge's apparent view that compulsory psychological evaluations and consultations of children are, at worst, innocuous.
[6] Under Florida Rule of Civil Procedure 1.360(a), when the mental condition "of a person in the custody or under the legal control of a party is in controversy," the court may, upon a showing of good cause, order the party to produce the person for a mental examination. It is doubtful that the threshold "in controversy" requirement was met. We need not decide whether it was or not in light of our conclusion that good cause was not shown.