553 So.2d 260 (1989)
In the Interest of T.M.W., a Child.
No. 89-1672.
District Court of Appeal of Florida, First District.
November 28, 1989.
Douglas D. Chunn, of Smith & Hulsey, Jacksonville, for petitioner.
Joel Goldman, Mary Beth Stephenson, of Goldman, Presser, Nussbaum & Stephenson, Jacksonville, for respondent.
WENTWORTH, Judge.
Petitioner R.W.W. seeks a writ of common law certiorari to review an order of the trial court granting a motion by respondent T.G. for an order requiring a psychological examination of his natural daughter T.M.W., the child sought to be adopted by petitioner, her stepfather. In addition, petitioner seeks review of an order which denied a Motion for Rehearing and Reconsideration of the Order Requiring Examination of the child.
We find that the order for the non-consenting child's examination is not in compliance with Rule 1.360, Florida Rules of Civil Procedure, and therefore grant the petition and reverse the order subject to a renewed motion for such relief. Common law certiorari is appropriate in this case because later review on appeal would provide an inadequate remedy after compulsory mental examination of a 12-year-old child which does not strictly comply with Rule 1.360. The rule requires an order which compels a mental or psychological examination to specify, in addition to time and place, the "manner, conditions and scope of the examination." (e.s.) In addition, such an order may be made only upon a showing of good cause, when the party's mental or physical condition is in direct controversy.
The child's mother and respondent had been married approximately five years at the time of their divorce on October 26, 1979. In May 1982 the petitioner married the mother, who had custody of T.M.W., and the child has since then lived with them and their two younger children. There appears to be no controversy as to the fact that respondent did not visit or write or talk with his daughter since either 1983 or 1984, despite knowledge of the telephone number and address where the child resided. His visitation rights under the dissolution judgment were not altered by an earlier *261 court order by which he obtained termination of support payments for the child.
During the final hearing the trial court heard considerable testimony, including that of Harry Krop, Ph.D., a forensic psychologist, and respondent had deposed both the child and her mother. Dr. Krop had been asked by counsel for the respondent father to consult with respondent to determine whether the relationship between the child and the father could be restored. Dr. Krop suggested that a "parental alienation syndrome" may be present in this case and recommended that he, or another qualified expert, examine the child for the purpose of exploring that syndrome. The trial court entered an order granting the psychological examination of the child, finding that further expert guidance and assistance is essential in order to resolve the issues presented in this case, and that it would be "foolish" not to utilize the services of Dr. Krop because of his familiarity with the case from previous contact with the father.
We conclude that the order failed to specify the manner and scope of the examination as required by Rule 1.360. The order did state the time to be June 7, 1989 at 3:00 p.m., and the place as Dr. Krop's office in Orange Park, Florida. Certain conditions were provided: the child's mother and stepfather should both have positive attitudes concerning the examination and should encourage the child to have the same. But the order provides only for the initial examination period and does not otherwise specify or define the manner and means of examination or indicate parties who have a right to be present.[1] Even assuming we might rely on other evidence in the record to clarify the terms of the order or to infer a limitation to methods routine to the profession, or perhaps a limitation to interview or written testing of the child alone, the record is ambiguous as to those limitations. As to the period of time required, Dr. Krop stated at one point that "six months would probably be [the estimated time needed to] give me information to be able to render a more definite opinion" as to whether the relationship between the father and the child can be restored. Nor is it clear from the testimony whether six months is also the period of time required for Dr. Krop to render an opinion as to whether "parental alienation syndrome" is present, and if so how it affects the abandonment issue.[2]
In the circumstances of this case the precise purpose of the examination, the means to be employed, and general nature of conditions and scope should have been stated in the order. The respondent's apparent contention is that the presence of the parental alienation syndrome would justify his conceded lack of contact or communication with the child for several years.[3] *262 Whether the father's alleged abandonment, if determined, can be legally excused by the presence of the syndrome in question is, however, not the question presented here, and accordingly need not be addressed.
We note that certiorari has been frequently granted and relief accorded to parents who requested review of orders compelling them to submit to mental examinations in cases involving application of the same or comparable rule provisions. See e.g., In the Interest of S.N. v. State, Dept. of Health & Rehab. Serv., 529 So.2d 1156 (Fla. 1st DCA 1988); Fruh v. State, Dept. of Health & Rehab. Serv., 430 So.2d 581 (Fla. 5th DCA 1983); and Kristensen v. Kristensen, 406 So.2d 1210 (Fla. 5th DCA 1981). S.N., Fruh, and Kristensen all involved orders compelling psychological examinations in dependency proceedings, as to which the rules, infra, provide substantially the same standards as those applicable in this case. In the cited cases, the orders were quashed on the grounds that the mental condition of the party affected was not "in controversy" and there was no showing of "good cause" as to why the forced examination was necessary.
While recognizing that a parent's "mental condition is implicated" in a custody proceeding, this court held in S.N., supra, that the showing under section 39.407(13), Florida Statutes, and Rule 8.870(b), Fla.R. Juv.Proc., of good cause which would warrant a court-compelled mental examination of a parent may not be based on inferences from severe behavioral problems in her child requiring removal from the home. Instead, it should be based on the parent's past conduct or behavior affecting the ability to meet the needs of the child, or on other evidence of the parent's need for evaluation. In a recent decision with respect to parental visitation the Second District Court found:
that to be `in controversy,' the condition must directly involve a material element of the cause of action and that to show `good cause' for the examination, it must be demonstrated that expert medical testimony is necessary to resolve the issue. Gasparino v. Murphy, 352 So.2d 933, 935 (Fla. 2d DCA 1977)... . Conclusory allegations alone do not put the appellant's mental health `in controversy' nor demonstrate `good cause' for submission to examination... . Because the record does not reflect the [father's] mental health was in controversy nor demonstrate good cause for a psychological examination of the appellant pursuant to Rule 1.360(1)(2), we reverse both of the orders on appeal.
Williams v. Williams, 550 So.2d 166 (Fla. 2d DCA 1989). Gasparino held in the different context of a wrongful death action:
The landmark case which interpreted the `in controversy' and `good cause' requirements [under Federal Rule of Civil Procedure 35(a) which is nearly identical to Fla.R.Civ.P. 1.360(a)] was Schlagenhauf v. Holder, 379 U.S. 104, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964). In Schlagenhauf *263 the court held that the `in controversy' and `good cause' requirements of Rule 35:
`... are not met by mere ... relevance to the case  but require an affirmative showing by the movant that each condition as to which the examination is sought is really and genuinely in controversy and that good cause exists for ordering each particular examination.' 379 U.S. at 118, 85 S.Ct. at 242-43.
In Schottenstein v. Schottenstein, 384 So.2d 933 (Fla. 3d DCA 1980), the court held that good cause was not shown for the psychological evaluation and counseling of the children involved:
While the trial judge may be a proselyte of psychological evaluations and consultations for every minor child of divorced parents, we cannot ignore the countervailing right of a person to be free from a compulsory mental examination. See Schlagenhauf v. Holder, 379 U.S. 104, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964); Schuppin v. Unification Church, 435 F. Supp. 603 (D.Vt. 1977). A compulsory mental examination has been traditionally deemed an invasion of privacy which will only be tolerated upon a showing of good cause. Marroni v. Matey, 82 F.R.D. 371 (E.D.Pa. 1979); Schuppin v. Unification Church, supra; Paul v. Paul, 366 So.2d 853 (Fla. 3d DCA 1979). This requirement of good cause is simply not met by a showing that the children were sometimes upset when they returned from a visitation with their father... .
In the present case the proper focus would appear to be the past conduct and interactions of the father with his child. But we recognize that "in adoption proceedings, the court's primary duty is to serve the best interests of the child which are the object of the proceeding." In re Adoption of H.Y.T., 458 So.2d 1127, 1128 (Fla. 1984). We conclude therefore that the trial court in the present case may, on remand, be able to state conditions sufficient under the rule and cases for the child's evaluation by Dr. Krop or some alternative expert.
The Motion for Rehearing and Reconsideration of the Order Requiring Examination of the child should have been granted in the absence of a strict compliance with the rule. We grant the writ and quash the order requiring the child to submit to a mental examination without prejudice to the respondent's seeking a new order pursuant to the rule.
Reversed and remanded for further proceedings consistent herewith.
SHIVERS, C.J., and WIGGINTON, J., concur.
NOTES
[1] The order states:

3. Scope of Examination: The scope of the examination is to prepare Dr. Krop to advise the court, whether, in his opinion, the parental alienation syndrome is present, and, if so, what effect it has had upon the child, her relationship with her father and his conduct towards her. Additionally, the court would like to hear from Dr. Krop as to what effect, if any, the granting or denying of the adoption will have on the child, whether the relationship between the child and the natural father can be restored and, in general, what is in the child's best interest.
[2] He also testified that testing (without specification other than "psychological") may be required, and that the mother would have to be "involved," together with observation through one-way mirror of the respondent father's interaction with the child, unless or until the child "felt traumatized".
[3] The trial court found "that the child should be examined as requested" because "further guidance and assistance for the court from Dr. Krop is essential" to resolve the case. The order merely recites Dr. Krop's request "to examine the child to determine to what extent, if any, the conduct of the mother affected the relationship and attitude of the child towards her father and if the alleged parental failures of the father were related to such conduct and attitude... . Dr. Krop described a condition known to mental health professionals as the `parental alienation syndrome' which, he said, may be present in this case. That syndrome is the subject of at least one reported Florida case, Schutz v. Schutz, 522 So.2d 874 (Fla. 3d DCA 1988)... ." We note that the syndrome in question is not "the subject of the Schutz opinion" (which treated only a constitutional issue), but instead was the subject of a footnote to a footnote therein which quotes a Florida Bar Journal article: Goldenberg, "Pity the Poor Child," Nov. 1987, p. 45. Neither the order nor record in the present case (nor the briefs in this court) contains any further reference to authority with respect to the syndrome, other than Dr. Krop's reliance on texts by a single author, Richard A. Gardner, M.D. ("The Parental Alienation Syndrome And The Differentiation Between Fabrication and Genuine Child Sex Abuse," and a "Recent Trends" article in Academy Forum, 29(2): 3-7, 1985, a psychoanalytic journal).

No determination was made in the order or on the record as to general professional acceptance of the "parental alienation syndrome" as a diagnostic tool. In the same (unrelated) context as the above cited Gardner treatise, i.e. child sex abuse, we note the cautionary words of other current commentators: "When considering the theory of expert testimony discussed in this subsection, it is vitally important to avoid the confusion engendered by reference to syndromes... . At the present time, experts have not achieved consensus on the existence of a psychological syndrome that can detect child sexual abuse. Use of the word syndrome leads only to confusion, and to unwarranted and unworkable comparisons to battered child syndrome. The best course is to avoid any mention of syndromes." Myers, Expert Testimony in Child Sexual Abuse Litigation, 68 Neb.L.Rev. 69 (1989). And to go even further afield, the few jurisdictions which preserve alienation of affection actions as to spouses have recognized the view of psychologists that causation probably cannot be sorted out, and require proof that the alleged alienating conduct "is so significant as to outweigh the combined effect of all other causes." Steffensen, A New Causation Standard, 4 Utah L.Rev. 885, 900 (1984).