ROTHENBERG, J.
S.L. Wade (“Mother”) petitions this Court for a writ of certiorari to review the trial court’s sua sponte order requiring her to: (1) submit to a psychological examination with a focus on anger control under Florida Rule of Civil Procedure 1.360 and Florida Family Law Rule of Procedure 12.360; and (2) participate in the parties’ *371 oldest child’s therapy during her timeshar-ing in Florida. For the reasons that follow, we grant the petition for writ of cer-tiorari and quash these portions of the order under review.[1]

I. BACKGROUND

In 2008, D.T. Wade (“Father”) filed for divorce in Cook County, Illinois. In 2010, the Illinois court dissolved the parties’ marriage, but the custody and financial issues remained pending. In 2011, the Illinois court entered a final custody judgment awarding sole custody of the parties’ two minor children to the Father and parenting time to the Mother. The trial court also granted the Father’s motion to remove the children to Florida. Thereafter, in 2012, the Father petitioned the Eleventh Judicial Circuit of Florida (“the Florida court”) to register and domesticate the Illinois final custody judgment. The Florida court granted the Father’s petition, and thereafter, the Illinois court relinquished its jurisdiction as to child custody matters to the Florida court, while maintaining jurisdiction over the partiés’ financial issues.
On July 22, 2013, the Father filed in the Florida court an Emergency Motion to Suspend [the Mother’s] Timesharing (“Emergency Motion”), requesting that the Mother’s timesharing be suspended pending the results of a psychological examination under Florida Rule of Civil Procedure 1.360 and Florida Family Law Rule of Procedure 12.360, or in the alternative, requiring that the Mother’s timesharing be supervised pending the results of her psychological examination. The primary support for the Emergency Motion was the Mother’s behavior during court proceedings in Illinois on July 18 and 19, 2013, including her attempt to discharge her attorney, and her behavior outside of the courthouse in Illinois on July 19, 2013. The Father’s Emergency Motion' stated that the Mother was outside of the- courthouse sitting beneath a sign that stated: “NBA MIAMI HEAT STAR MOTHER OF HIS CHILDREN ON THE STREETS.” The Father asserted that based on the Mother’s behavior, he feared that the Mother “may do something drastic to the children or herself.” The Mother filed a response, asserting, in part, that the Father’s unverified Emergency Motion was not only factually and legally deficient, but it also was “another improper attempt to modify the Mother’s timesharing rights without due process.”
At the emergency hearing before the Florida court, the only witness who testified was Howard Rosenberg, a licensed attorney in Illinois who is the Parent Coordinator appointed by the Illinois court. Over a hearsay objection, Mr. Rosenberg testified that he was concerned with the Mother’s behavior outside of the Illinois courthouse on July 19, 2013. Mr. Rosenberg acknowledged that he did not personally observe the Mother’s behavior, but he later received videotapes of a YouTube video that captured the incident. Over the Mother’s counsel’s objections based on hearsay, relevance,-and lack of authentication, the trial court allowed the Father’s counsel to play the video for Mr. Rosenberg so that he could ascertain whether this was the YouTube video that he had viewed and to identify the Mother in the video. Thereafter, the trial court admitted the YouTube video into evidence.
The trial court then viewed the video in its entirety. The video depicts the Mother speaking to individuals who appear to be reporters in a public área in front of the *372 Illinois courthouse. In addition to the reporters, the Mother is accompanied by individuals holding signs that state: “WHAT IS THE PRICE FOR JUSTICE?” and “NBA MIAMI HEAT STAR MOTHER OF HIS CHILDREN ON THE STREETS.” During the video, the Mother appears to be passionate and upset while discussing three main topics: an alleged settlement agreement; the interference of her parenting time both in Florida and Illinois; and her attorney allegedly dismissing, without her knowledge, a lawsuit she filed against the Father.
First, the Mother stated that the Father’s counsel filed a motion to enforce a settlement, although she had not agreed to a settlement or signed a settlement agreement. During the court proceeding held earlier that day, the Illinois court allegedly told the Mother that her counsel had agreed to the settlement, and therefore, the court would decide on Monday, July 22, 2013, whether to force the Mother to accept the agreement. Second, the Mother explained that when she arrived in Florida for her parenting time; she learned from the Father that the oldest child would be attending a basketball tournament, which would take place during her parenting time. Also, when the children were in Chicago for the Mother’s parenting time, the Father informed the Mother that he would have someone pick up the children on two of her three parenting days so that the children could play basketball for eight or nine hours each day. The Mother explained that during her timesharing with the children, she should be able to plan the children’s activities, such as visiting the children’s grandparents and a great grandmother. In addition, the Mother stated that the Parenting Coordinator, Mr. Rosenberg, told her that if she did not allow the oldest child to play basketball on those two days while in Chicago, he would recommend to the Florida court that the Mother not be able to see her children. Finally, the Mother stated that she filed a separate lawsuit against the Father, and that one of her attorneys withdrew the lawsuit without her knowledge. She later learned of the withdrawal on the internet. The YouTube video appeared to be edited, and therefore, included only a portion of the incident.
Over hearsay objection, the trial court also permitted Mr. Rosenberg to testify as to an alleged telephone conversation, initiated by the parties’ oldest child, regarding the YouTube video. Mr. Rosenberg further testified that he spoke to the Mother on the morning of July 22, 2013, and she assured him that she had no intention of being vocal around the children. Mr. Rosenberg then wrote a letter to the parties’ Illinois counsel recommending that the Mother’s parenting time should go forward.
During the hearing, Mr. Rosenberg, as the Parent Coordinator, made the following recommendations to the trial court: (1) the Mother’s summer visitation should be shortened from periods of two weeks to periods of four nights; (2) the oldest child should remain in therapy with his current therapist; (3) the Mother should participate in the oldest child’s therapy sessions in Miami; (4) the Mother should attend individual therapy; (5) the Mother and the Father should begin to directly communicate ' with each other; (6) the Mother should stop making disparaging comments about the Father in public; and (7) the Mother’s two-hour window to return the oldest child’s phone calls should be shortened to half an hour. Mr. Rosenberg clarified that he was not recommending that the Mother’s timesharing with her children be suspended, and he was not recommending that the Mother submit to a psychological evaluation because that “is not [his] job” as the Parenting Coordinator. Mr. *373 Rosenberg testified that, in essence, he was recommending several modifications to the final custody judgment.
At the conclusion of the hearing, the Mother’s counsel moved for a “directed finding,” arguing that the Father failed to establish that the Mother’s timesharing should be suspended. The trial court ruled that, based on the YouTube video and Mr. Rosenberg’s testimony, there was insufficient evidence to support the Father’s claim to either suspend the Mother’s timesharing or the Father’s alternative claim to have the Mother’s timesharing supervised. The trial court, however, sua sponte ordered the Mother to (1) undergo a psychological evaluation with a focus on anger control under Florida Rule of Civil Procedure 1.860, and (2) participate in the oldest child’s therapy sessions while the Mother is in Miami for her parenting time.
In its written order of August 12, 2013, the trial court denied the Father’s Motion to Suspend [the Mother’s] Timesharing, thereby allowing the Mother’s scheduled parenting time with the children to occur. In fact, the court ordered that the children go home with the Mother that same day. The trial court, however, found that it had “a degree of concern about the Mother’s recent behavior, which is erratic at best and irresponsible at worst.” (Emphasis added). The order, however, does not specify the behavior' providing the basis for such concern. Further, the trial court found that it was also concerned about the Mother’s actions in front of the courthouse in Illinois because the Mother brought “her feelings regarding this litigation into the public domain.” Based on the “totality of the circumstances,” the trial court found that “good cause” existed to require the Mother to submit to a compulsory psychological evaluation with a focus on anger control.[2] The trial court’s order, however, does not directly address the “in controversy” requirement of rule 1.360(l)(a), and its findings regarding “good, cause” are largely conclusory. The trial court also sua sponte ordered that the Mother participate in the oldest child’s therapy during her parenting time in Florida. This petition for writ of certiorari followed.

II. ISSUE

The Mother asserts that the trial court’s sua sponte order requiring her to undergo a psychological examination and to participate in her oldest.child’s therapy departs from the essential requirements of law where her mental condition was not “in controversy” and “good cause” was not shown as required by Florida Rule of Civil Procedure 1.360.[3] Based on our review of the record, we agree.

*374
III. ANALYSIS

Florida Rule of Civil Procedure 1.360(a)(1) provides that “[a] party may request any other party to submit to ... examination by a qualified expert when the condition that is the subject of the requested examination is in controversy.” Fla. R. Civ. P. 1.860(a)(1) (emphasis added). Further, an examination under rule 1.360(a) “is authorized only when the party submitting the request has good cause for the examination.” Fla. R. Civ. P. 1.360(a)(2) (emphasis added). At any hearing on the request for compulsory examination, the party submitting the request has the burden of showing that both the “in controversy” and “good cause” prongs have been satisfied. Id.; see also Schlagenhauf v. Holder, 379 U.S. 104, 118-19, 85 S.Ct. 234, 13 L.Ed.2d 152 (stating that “the trial judge ... must decide ... whether the party requesting a mental or physical examination or examinations has adequately demonstrated the existence of the Rule’s requirements of ‘in controversy and ‘good cause’ ”). There is a heightened burden of proof when the party subject to the forced examination has not voluntarily placed that issue in controversy. Schlagenhauf, 379 U.S. at 119-20, 85 S.Ct. 234.
In Paul v. Paul, 366 So.2d 853 (Fla. 3d DCA 1979), the trial court ordered the husband in a dissolution of marriage action to submit to compulsory mental and physical examinations. Id. at 853. In addressing whether the record reflects that the two prerequisites for a compulsory examination—(1) the condition that is the subject of the requested examination is “in controversy” and (2) the party submitting the request has shown “good cause” for the examination—were satisfied, this Court relied on Gasparino v. Murphy, 352 So.2d 933 (Fla. 2d DCA 1977), which stated:
The two essential prerequisites that must be clearly manifested are: (1) that petitioner’s mental condition is “in controversy” i.e. directly involved in some material element of the cause of action or a defense; and (2) that “good cause” be shown i.e. that the mental state of petitioner, even though “in controversy,” cannot adequately be evidenced without the assistance of expert medical testimony.
Id. at 935; see also Doe v. Suntrnst Bank, 32 So.3d 133, 139-40 (Fla. 2d DCA 2010) (holding that a party seeking an examination under rule 1.360 must demonstrate that the condition is genuinely in controversy and that good cause exists to order the examination); Williams v. Williams, 550 So.2d 166, 167 (Fla. 2d DCA 1989).
In Schlagenhauf, the United States Supreme Court addressed the “in controversy” and “good cause” requirements of Federal Rule of Civil Procedure 35(a), which is substantially similar to Florida Rule of Civil Procedure 1.360(a). In doing so, the Court held that the “in controversy” and “good cause” requirements
are not met by mere conclusory allegations of the pleadings—nor by mere relevance to the case—but require an affirmative showing by the movant that each condition as to which the examination is sought is really and genuinely in controversy and that good cause exists for ordering each particular examination.
Id. at 118 (emphasis added). Thus, the trial court’s sua sponte order requiring the Mother to submit to a compulsory mental examination is a departure from the essential requirements of law unless both prongs of rule 1.360 were adequately established.

A. The “In Controversy”Requirement

In addressing whether the Mother’s mental condition was “in controversy,” *375 we note that the trial court’s written order completely fails to address this “essential prerequisite.” This alone may be sufficient to overturn the trial court’s order. See Russenberger v. Russenberger,. 639 So.2d 963, 965 (Fla.1994) (stating that the trial court should make specific findings as to both prongs under rule 1.360 before ordering a mandatory psychological evaluation). Nonetheless, we examine the Father’s Emergency Motion and the admissible evidence presented at the hearing to determine if the Mother’s mental condition was directly and genuinely in controversy.
While a parent’s emotional state is certainly relevant in making a custody determination, “the fact that custody is at issue should not alone create a reason to order a psychological evaluation.” Id.; see also Frisard v. Frisard, 453 So.2d 1150, 1152 (Fla. 4th DCA 1984) (“Mental, or psychological examinations are not automatic [in child custody disputes], - and should not be.”). A parent’s mental state is typically at issue in a custody hearing only when there are verified allegations that the parent in question is having mental problems that could substantially impact his or her ability to properly raise children. See In re G.D., 870 So.2d 235, 238 (Fla. 2d DCA 2004) (holding that in a dependency case, a parent’s mental state is not “at issue” until the State’s petition for termination of parental rights containing pertinent allegations of mental insufficiency is filed).
In his Emergency Motion, the Father asserted that he feared that the Mother “may do something drastic to the children or herself.” In support of his “fear,” the Father relied primarily on the Mother’s interaction with her attorney during the Illinois court proceedings and the Mother’s actions outside of the Illinois courthouse where she sat underneath a sign that stated: “NBA MIAMI HEAT STAR MOTHER OF HIS CHILDREN ON THE STREETS.” In addition, at the hearing, the Father admitted into evidence the YouTube video of the Mother outside of the Illinois courthouse. The video merely depicts a woman who is passionately voicing her views as to several, matters that allegedly occurred during her divorce action. This video is insufficient to place the Mother’s mental condition “in controversy.” While the Father may disapprove of this behavior, he has not properly alleged or explained how this behavior makes the Mother unfit to exercise her parenting time with the children. See Russenberger, 639 So.2d at 965 (holding that “conclusory allegations in the pleadings and argument by counsel” are insufficient to place a party’s mental state in controversy).
Moreover, on the very day that it ordered the Mother to submit to a compulsory psychological examination, the trial court also ruled that the Mother’s scheduled parenting time would take place. Thus, it appears that the trial court did not “genuinely” believe that the Mother’s mental condition was “in controversy” or that the children would be at risk if the scheduled visitation took place. Although we acknowledge that the sign erroneously suggests that the Father is allowing the mother of his children to be homeless, we conclude that the sign, in conjunction with her behavior during the Illinois court proceedings, did not demonstrate that the Mother’s mental condition was “in controversy” because it has little to do with her parental fitness.[4]

*376
B. The “Good, Cause” Requirement

Even if a party’s mental condition is in controversy, “[a]n examination under [rule 1.360] is authorized only when the party submitting the request has good cause for the examination. At any hearing the party submitting the request shall have the burden of showing good cause.” Fla. R. Civ. P. 1.360(a)(2) (emphasis added). The movant under rule 1.360 must make a- showing of good cause before a court may order a mental or physical examination because such examinations infringe on the subject party’s privacy rights. See Schottenstein v. Schottenstein, 384 So.2d 933, 936 (Fla. 3d DCA 1980) (“A compulsory mental examination has been traditionally deemed an invasion of privacy which- will only be tolerated upon a showing of good cause.”); Gasparino, 352 So.2d at 936 (“Under the facts and circumstances we feel that no basis has been demonstrated for the invasion of petitioner’s right of privacy.”) (emphasis added). Furthermore, in a child custody case, “[t]he showing of ‘good cause’ ... should be based on evidence that the parent has been unable to meet the special needs of the child.” Williams, 550 So.2d at 167 (quoting S.N. v. Dep’t of Health & Rehab. Servs., 529 So.2d 1156, 1159 (Fla. 1st DCA 1988)).
In Williams, the trial court, on its own motion, ordered the father to submit to a psychological evaluation and restricted the father’s visitation with his son pending the results of the evaluation. Williams, 550 So.2d at. 167. On review, the Second District Court of Appeal noted that the mother’s pleadings contained “conclusory allegations” regarding the father’s “mental stability,” and that “[c]onclusory allegations alone do not put [the father’s] mental health ‘in controversy’ nor demonstrate ‘good cause’ for submission to examination.” Id. at 168 (citing Fruh v. Dep’t of Health & Rehab. Servs., 430 So.2d 581 (Fla. 5th DCA 1983)). In concluding that the record did not demonstrate “good cause” for the court-ordered mental examination, the Second District noted that the record contained an evaluation of parties’ son, reflecting that “the child was well adjusted [sic], affectionate and attached to both parents, although the counselor expressed concern that the animosity of the parents might someday affect the child.” Id.
Here, we have a very similar case. There has been no evidence, other than the Father’s conclusory allegations in his Emergency Motion, that any of the Mother’s behavior has had, or will have, an adverse effect on the children, or that the Mother cannot meet the needs of the children. To reiterate, the trial court ordered that the children should go home with the Mother for visitation the very same afternoon that it ordered her to undergo a mental evaluation. Thus, the trial court clearly did not think there was “good cause” to believe that the Mother’s mental status jeopardized the children’s well-being. We agree that the Mother’s actions in front of the Illinois courthouse erroneously suggested that she was homeless, *377 but this is insufficient to satisfy the “good cause” prerequisite under rule 1.360.
We conclude that the pleadings and the admissible evidence presented at the hearing do not demonstrate that the Mother’s mental condition is “in controversy” or that “good cause” exists to subject her to a compulsory mental examination, and thus, the trial court’s order departs from the essential requirements of law. Accordingly, we grant the petition for writ of certio-rari and quash the portions of the order relating to the compulsory psychological examination of the Mother and the Mother’s participation in the oldest child’s therapy.
Petition granted; order quashed in part.

. The Mother’s petition for writ of certiorari does not address the portion of the trial court's sua sponte order requiring the parties' oldest child to remain in therapy with his current therapist. Therefore, that portion of the order is not quashed.

. The trial court's sua sponte order does not rely on, or even refer to, Mr. Rosenberg’s alleged conversation with the parties’ oldest child regarding the YouTube video of the Mother in front of the Illinois courthouse. Even if the trial court would have relied on the alleged conversation, we would have determined that the testimony was inadmissible hearsay as it does not fall within any of the exceptions to the admission of hearsay evidence. § 90.801 (l)(c), Fla. Stat. (2013) (defining "hearsay” as "a statement, other than one made by the declarant while testifying at the trial court or hearing, offered in evidence to prove the truth of the matter asserted”); § 90.802, Fla. Stat. (2013) ("Except as provided by statute, hearsay evidence is inadmissible.”). Therefore, we would not have relied on the testimony in addressing the Mother’s petition for writ of certiorari.

. Florida Family Law Rule of Procedure 12.360 provides that "Florida Rule of Civil Procedure 1.360 shall govern general provisions concerning the examination of persons in family law matters, except that examinations permitted under rule 1.360(a)(1) may include ... examinations involving ... mental condition_”

. The purported settlement agreement that the Mother addressed in the YouTube video apparently contains a "non-disparagement” clause, which provides that the Mother "shall not directly or indirectly, orally or in writing, make or release any disparaging or false communication or information, or cause or encourage others to make or release any dispar *376 aging or false communication or information regarding [the Father].” If the Mother violates this provision, the Father "may enforce this Paragraph against [the Mother], and [the Mother] shall be liable to [the Father] for payment of liquidated damages in the amount of Forty Thousand Dollars ($40,000.00) for each occurrence where a violation has been determined by a court of competent jurisdiction.” (Emphasis added). The Mother’s action of allowing someone to hold a sign over her head, which .falsely suggests that the Father has allowed the mother of his children to be homeless, is the type of disparaging or false information that would subject the Mother to pay $40,000 to the Father in damages. At this point, however, it does not warrant a compulsory psychological examination.